# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,　)
　)
　)
　　　v.　) I.D. Nos. 1706012725, 1708022021
　)
GARY JONES,　)
　)
　　Defendant.　)

Date Submitted: April 19, 2022
Date Decided: July 20, 2022

*Upon Consideration of Defendant's Motion for Post-Conviction Relief - **DENIED***.


# MEMORANDUM OPINION


Renee L. Hrivnak, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for the State of Delaware*.

Patrick J. Collins, Esquire, and Kimberly A. Price, Esquire, Collins & Price, Wilmington, Delaware. *Attorneys for Defendant Gary Jones*.


**JURDEN, P.J.**

Defendant Gary Jones was convicted on various charges after he assaulted his ex-girlfriend and then threatened to murder her with a screwdriver. Jones now moves for post-conviction relief. He does not maintain his innocence. Instead, he alleges that his lawyer ("Trial Counsel") ineffectively failed to file acquittal and severance motions. The Court finds that Trial Counsel performed reasonably and did not prejudice the defense. Accordingly, Jones's Rule 61 motion is denied.

## I.    BACKGROUND[1]

### A. The Attack

Jones and Natosha Frisby had a rocky relationship. They broke up several times and would reunite only for the sake of their child.[2] While dating Frisby, Jones was possessive and paranoid about Frisby's fidelity. For example, earlier in the same day that gave rise to this case, Jones followed Frisby into a public bathroom to confirm that she was not inside a stall with someone else.[3] Moments before though, Jones had been guarding the bathroom entrance,[4] making a rendezvous between Frisby and another person impossible.

---

[1] The Court has drawn the facts from the appendix attached to Jones's motion, the exhibits contained in the larger criminal file, and the Delaware Supreme Court's findings on direct appeal. Where appropriate, the Court will cite to specific items in the record. Items in the appendix are denominated using "A[#]."

[2] A57 at 75:12 (Direct Exam. of Natosha Frisby).

[3] A58 at 77:7–18 (Direct Exam. of Natosha Frisby).

[4] *Id.* at 77:21 (Direct Exam. of Natosha Frisby).

Jones's psychological abuse culminated in physical violence. After the bathroom episode, Jones and Frisby returned to Frisby's house. Frisby and the couple's child fell asleep on separate couches. Frisby recalled that the lights were on before she shut her eyes. When she awoke, however, the room was completely dark; all the lights were purposefully unplugged.[5]

Jones was standing over Frisby as she regained consciousness. Then he started punching her in the face. He struck her eyes, ears, and mouth as she bled, cried, and begged. He muffled her screams with his palm. He used his weight to hold her down. And he almost broke her fingers as she tried to pry his hands off her.[6] All this happened while the couple's child was a few feet away.

Jones's brutality left Frisby's head so sore that she could barely speak.[7] But Jones was not done yet.

Jones ordered Frisby to the kitchen, where he started wielding a screwdriver. He ignored her as she told him to stop.[8] Forcing the screwdriver against her chest, Jones demanded that Frisby tell him whether she had been cheating on him.[9] He

---

[5] A59 at 82:17–22 (Direct Exam. of Natosha Frisby).
[6] *Id.* at 83:15–18 (Direct Exam. of Natosha Frisby); A66 at 109:4–10 (Cross Exam. of Natosha Frisby).
[7] A68 at 117:9 (Direct Exam. of Francis Frisby).
[8] A59 at 84:18–23 (Direct Exam. of Natosha Frisby).
[9] A59 at 84:16 (Direct Exam. of Natosha Frisby); A66 at 110:11–12 (Cross Exam. of Natosha Frisby).

3

warned that he would kill her if she did not give him the answer he wanted.[10] In that moment, Frisby believed him; she feared that he would murder her.[11]

Jones brought Frisby to a mirror. Remarking on her injuries, Jones explained that she "made [him] do that to [her]."[12] Frisby recalled being scared and nervous at this time.[13] Hyperventilating, Frisby asked Jones to take her to the hospital.[14] Jones refused. He did not want their "dialogue" to be interrupted.[15]

Jones fled before the police arrived. He was arrested a few weeks later.

## B. The Letter

A New Castle County grand jury indicted Jones on six charges: (1) Aggravated Menacing; (2) Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"); (3) Terroristic Threatening; (4) Unlawful Imprisonment Second Degree; (5) Assault Third Degree; and (6) Endangering the Welfare of a Child. A commissioner set bail, which Jones did not post, and a bond was issued.

A no contact order followed from the bond and served as a condition of Jones's pre-trial detention. Among other things, the order banned Jones from sending letters to Frisby.[16]

---

[10] *Id.* at 84:14–16 (Direct Exam. of Natosha Frisby).
[11] A59 at 113:5 (Redirect Exam. of Natosha Frisby).
[12] A60 at 85:4–5 (Direct Exam. of Natosha Frisby).
[13] *Id.* at 85:7–21 (Direct Exam. of Natosha Frisby).
[14] *Id.* at 85:19 (Direct Exam. of Natosha Frisby).
[15] *Id.* at 85:9–10, 14–20 (Direct Exam. of Natosha Frisby).
[16] A38 (No Contact Or. & Pre-Trial Conditions).

Jones sent a letter to Frisby anyway (the "Letter").[17]  The Letter bore the address of the prison where Jones was held.  Through the Letter, Jones tried to manipulate Frisby into being uncooperative.  He accused her of abandoning him, referenced suicidal ideation, and repeatedly asked for another chance.[18]  He also stressed that he would receive significant prison time if he were convicted.

Frisby disclosed the Letter to the police.  Based on the Letter, the State secured an amended indictment against Jones that added two counts of Non-Compliance with Bond Conditions ("Non-Comp Bond").  Those charges were joined with the others.  Jones, accompanied by Trial Counsel, rejected a favorable plea offer[19] and proceeded to a jury trial.

## C.  The Trial

The State offered at trial that Jones's child was within sight and earshot while Jones restrained and assaulted Frisby and threatened to murder her.  This evidence was relevant to all the misdemeanors,[20] but did not without more prove the felonies:

---

[17] A35–37 (Letter from Gary Jones, to [couple's child] (Aug. 14, 2017)).  Jones tried to sidestep the no-contact order by addressing the Letter to the couple's child.  A35.  The no contact order, however, applied to both Frisby and the couple's child.  A38.  Hence, the two counts of Non-Compliance with Bond Conditions with which Jones ultimately was charged.

[18] A37.

[19] *See* A30–32 (Final Case Rev. Tr.) (Jones rejects a global two-year plea offer despite his 34-year exposure).

[20] *See generally* 11 *Del. C.* § 611(1) (1995) (Assault Third) (physical injury); *id.* § 621(a)(1) (2015) (Terroristic Threatening) (threat to commit a lethal act); *id.* § 781 (1995) (Unlawful Imprisonment Second) (illegal restraint); *id.* § 1102(a)(4) (2019) (Endangering) (child present for any of the above offenses).  Jones did not appeal the evidence supporting these charges and he does not now claim that Trial Counsel was ineffective in defending against them.

Aggravated Menacing, PDWDCF, and Non-Comp Bond. Accordingly, Trial Counsel focused Jones's defense on these three offenses.

### 1. The Deadly Weapon Defense

Aggravated Menacing and PDWDCF involve a "deadly weapon."[21] As will be important later, a "deadly weapon" includes "any dangerous instrument . . . which is *used, or attempted to be used*, to cause death or serious physical injury."[22] A "dangerous instrument," in contrast, is "any instrument . . . which, under the circumstances in which it is used, attempted to be used *or threatened to be used*, is capable of causing death or serious physical injury[.]"[23]

Trial Counsel observed that the deadly weapon definition omits a "threatened use" element.[24] This may have been a legislative oversight; the statutes have been amended many times.[25] But it did give the defense an opening.

Seizing on the omission, Trial Counsel contended that Jones's threatened use made the screwdriver a "dangerous instrument," but not a "deadly weapon."[26] To be a deadly weapon, Trial Counsel urged, Jones actually had to "use or attempt to

---

[21] *See generally id.* § 602(b) (1995) (Aggravated Menacing) (A person is guilty of Aggravated Menacing if the person "display[s] what appears to be a deadly weapon" so as to "intentionally place[] another person in fear of imminent physical injury."); *id.* § 1447(a) (2019) (PDWDCF) (A person is guilty of PDWDCF if the person "is in possession of a deadly weapon during the commission of a felony.").

[22] *Id.* § 222(6) (2021) (emphasis added).

[23] *Id.* § 222(5) (emphasis added).

[24] *See, e.g.*, A83 at 44:19 (Prayer Conf.).

[25] *See generally Johnson v. State*, 711 A.2d 18, 25–27 (Del. 1991).

[26] A83 at 44:20–21, A84 at 45:1–7, 13–18 (Prayer Conf.).

use" the screwdriver.[27] Trial Counsel could not find, and the State was not aware of, any caselaw that supported his interpretation.[28] The Court thus treated the defense's construction as novel and the State did not object to the jury hearing it.

Trial Counsel developed evidence for his theory through cross-examination. He elicited from Frisby that Jones "did not try to stab" her with the screwdriver.[29] And he elicited from a police witness that Frisby never accused Jones of stabbing her either.[30]

Trial Counsel did not use this testimony to move for acquittal. But he did use it to emphasize in summation that the screwdriver never became a deadly weapon. Consistent with Jones's view of the evidence and the law, Trial Counsel told the jury that Jones did not actually use or attempt to use the screwdriver to harm Frisby:

> The only way that [the] screwdriver is a deadly weapon is if it is actually used to cause physical injury, or if there is an actual attempt to cause serious physical injury . . . . Is taking a screwdriver and pointing it at someone . . . the same as using that screwdriver to cause a serious injury? Of course not. Is it threatening? Absolutely. But is it an actual attempt to cause a serious injury? It is [the] defense's position that it is not.[31]

---

[27] *See, e.g.*, A84 at 45:13–18 (Prayer Conf.).
[28] *Id.* at 45:19–23, 46:1 (Prayer Conf.).
[29] A66 at 110:17–19 (Cross Exam. of Natosha Frisby).
[30] A70 at 128:5–11 (Cross Exam. of Joshua Willis).
[31] A89 at 67:16–19, A90 at 72:22–23, A91 at 73:1–5 (Def.'s Closing Arg.).

Trial Counsel proposed to amend the deadly weapon instructions to reflect the defense's reading of the statutes. The State did not object. Accordingly, the Court accepted the defense's amended instructions and read them to the jury.[32]

### 2. The Non-Comp Bond Defense

Trial Counsel did not move to sever the Non-Comp Bond charges. The State thus introduced the Letter alongside everything else. As noted earlier, the Letter indicated that Jones was in jail. And Jones used the Letter to calculate his sentencing exposure. So the Court asked whether the defense would seek a curative instruction.

The defense said no.[33] Trial Counsel explained that "strategically the best move" for the defense was to minimize the jury's attention on the gravity of Jones's charges and their associated penalties.[34] Accordingly, Trial Counsel narrowed his presentation to whether Jones was held in lieu of bail.[35] Neither party argued that the Letter's contents were essential to proving Non-Comp Bond.

### D. The Appeal

The jury found Jones guilty on all charges. The Court sentenced him to 33 years at Level V, suspended after 15 years for decreasing levels of supervision.[36]

---

[32] *See, e.g.*, A95 at 92:9–16 (PDWDCF Instr.).

[33] A65 at 105:5–6 (Sidebar).

[34] A100 at 112:14–23, 113:1–4 (Post-Trial Conf.).

[35] *See, e.g.*, A91 at 73:6–23, 74:1–20 (Def.'s Closing Arg.); *see generally* 11 *Del. C.* § 2109(c), (c)(1) (2018) (Non-Comp Bond).

[36] A139–43 (Sentencing Order). The Court noted several aggravating factors, including Jones's extensive criminal history, his status as a Pennsylvania sex offender, and his undue depreciation of his offenses. A143 (Sentencing Order).

Jones appealed. Trial Counsel did not represent Jones on appeal. Through different counsel,[37] Jones filed an opening brief that tracked Trial Counsel's arguments. Jones argued that the State failed to adduce sufficient evidence to prove that he displayed or possessed a deadly weapon and that he was held in lieu of bail.[38]

The Supreme Court affirmed. In doing so, the Supreme Court observed that Trial Counsel did not move for acquittal as to any charge.[39] Thus, the Supreme Court applied plain error review to Jones's claims.[40] Using that standard, the Supreme Court found "sufficient" evidence that (1) the screwdriver "appeared" to Frisby as a deadly weapon;[41] (2) under the circumstances, placing the screwdriver against Frisby's chest was an "attempt[] to cause serious physical injury";[42] and (3) Jones was held on felony charges and knowingly violated the no contact order.[43] The Supreme Court could not have made these rulings consistent with plain error review unless there was no "basic, serious and fundamental error" that was "apparent on the face of the record" and "clearly prejudiced" Jones's trial.[44]

---

[37] Jones was represented by conflict counsel because his appointed appellate counsel unsuccessfully filed a no-merit brief and then moved to withdraw. *See* Rule 26(c) Br., *Jones v. State*, 2020 WL 91815 (Del. Jan. 7, 2020) (No. 429,2018), D.I. 14; Order Granting Mot. to Withdraw & Den. Mot. to Affirm ¶ 3, in *id.*, D.I. 16.

[38] Appellant's Opening Br. at 9–27, in *id.*, D.I. 19.

[39] *Jones*, 2020 WL 91815, at *2.

[40] *Id.*

[41] *Id.* at *3 (internal quotation marks omitted).

[42] *Id.* at *4.

[43] *Id.*

[44] *Id.* at *2 (internal quotation marks omitted).

The Supreme Court issued its mandate on February 7, 2020.[45] This Rule 61 motion followed.[46]

## E. This Motion

On April 7, 2020, Jones moved *pro se* under Rule 61 for post-conviction relief. The Court appointed post-conviction counsel to represent him. Post-conviction counsel eventually filed a revised Rule 61 motion, which the State has opposed.

Jones has never maintained his innocence. He instead alleges two ineffective assistance claims. Trial Counsel has responded with a two-paragraph affidavit.[47]

### 1. The Acquittal Claim

Jones first alleges that Trial Counsel was ineffective because he did not move for acquittal against the Aggravated Menacing and PDWDCF charges (the "Acquittal Claim"). According to Jones, the Court would have granted an acquittal motion because there was no evidence that he "attempted to stab" Frisby.[48] Trial Counsel's error was prejudicial, in Jones's view, because it led to his convictions and confined his appellate arguments to plain error review.[49]

---

[45] Supr. Ct. Mandate, *Jones v. State*, 2020 WL 91815 (Del. Jan. 7, 2020) (No. 429,2018), D.I. 25.
[46] Jones also moved *pro se* under Rule 35 for a sentence modification. The Court denied that motion, D.I. 38 (I.D. No. 1706012725), and the Supreme Court affirmed, *Jones v. State*, 2020 WL 4187303 (Del. July 20, 2020). Jones's sentencing challenges are not at issue here.
[47] *See generally* D.I. 54 (I.D. No. 1706012725) [hereinafter "Margules Aff."].
[48] *E.g.*, Def.'s Am. R. 61 Mot. at 18.
[49] *Id.* at 19–20.

Trial Counsel acknowledges that he did not move for acquittal.[50] He says that he cannot "recall" the reason behind this choice.[51]

### 2. The Severance Claim

Jones also alleges that Trial Counsel was ineffective because he did not move to sever the Non-Comp Bond charges (the "Severance Claim"). Because those charges were not severed, Jones insists, the jury considered the Letter's contents and his incarcerated status in finding him guilty. Jones does not articulate precisely what prejudice this alleged error caused him, but he seems to suggest that the jury found him guilty because of a generalized bias against people who cannot post bail.[52]

Trial Counsel agrees that he did not move to sever.[53] Again, he says that he cannot recall why.[54]

## II.    STANDARD OF REVIEW

A defendant may move under Criminal Rule 61 for post-conviction relief.[55] Rule 61 "balance[s]" the law's interest in conviction finality "against . . . the important role of the courts in preventing injustice."[56] Although the availability of

---

[50] Margules Aff. ¶ 1.
[51] *Id.*
[52] Def.'s Am. R. 61 Mot. at 25.
[53] Margules Aff. ¶ 2.
[54] *Id.* The Court appreciates Trial Counsel's affidavit, but ultimately finds that the trial and appellate records and the parties' briefing provide independent and adequate information for assessing Jones's motion. *See Pierce v. State*, 2009 WL 189150, at *3 (Del. Jan. 16, 2009).
[55] Del. Super. Ct. Crim. R. 61.
[56] *Zebroski v. State*, 12 A.3d 1115, 1120 (Del. 2010).

11

collateral review reintroduces uncertainty into completed criminal proceedings, the ("extremely rare") possibility of undetected innocence or a comparable miscarriage of justice overrides its disruptive effects.[57]

In the generic case, however, there must be a "definitive end to the litigable aspect of the criminal process."[58] Collateral review "ensure[s] that individuals are not imprisoned" wrongly; it is not designed to correct minor "errors of fact."[59] "Calibrated to screen for the wrongfully convicted, Rule 61 should not be used to launch *post hoc* strikes on issues inessential to a judgment of guilt."[60]

Rule 61 does not "allow defendants unlimited opportunities to relitigate their convictions."[61] To deter abusive collateral litigation, the standards and presumptions "adopted" under post-conviction rules purposefully have made "winning [collateral] relief difficult[.]"[62] For example, a defendant seeking to invalidate a conviction must contend with a "presumption of regularity."[63] "The presumption of regularity attaches to all final judgments . . . and implies those judgments have been done rightly until contrary evidence appears."[64] Accordingly, Rule 61 shifts to the

---

[57] *Schlup v. Delo*, 513 U.S. 298, 321 (1995). *Accord Purnell v. State*, 254 A.3d 1053, 1122–23 (Del. 2021).

[58] *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990).

[59] *Herrera v. Collins*, 506 U.S. 390, 400 (1993).

[60] *State v. Owens*, 2021 WL 6058520, at *10 (Del. Super. Ct. Dec. 21, 2021).

[61] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).

[62] *Brown v. Davenport*, 142 S. Ct. 1510, 1526 (2022).

[63] *E.g.*, *Parke v. Raley*, 506 U.S. 20, 29 (1992); *accord Xenidis v. State*, 2020 WL 1274624, at *2 (Del. Mar. 17, 2020).

[64] *Xenidis*, 2020 WL 1274624, at *2.

defendant the burden of demonstrating that his conviction is not supported by a "sufficient factual and legal basis" that otherwise will be presumed.[65]

## III.  ANALYSIS

A Rule 61 analysis proceeds in two steps.  First, the Court must determine whether the motion is procedurally barred.[66]  If it is not barred, the Court next reviews the motion's merits on a claim-by-claim basis.[67]  As explained below, Jones's motion is not barred, but it fails to state a claim for post-conviction relief.

### A.  Jones's motion is not procedurally barred.

Rule 61 was adopted to create a mechanism for presenting collateral claims for post-conviction relief.[68]  As a result, there are several procedural limitations on the availability of post-conviction relief.[69]  Rule 61 contains four procedural bars that, if applicable, preclude review of all or part of the defendant's motion.[70]  Rule 61 bars claims that are untimely,[71] successive,[72] defaulted,[73] or formerly adjudicated.[74]

---

[65] Del. Super. Ct. Crim. R. 61(a)(1).  *See, e.g.*, *Dorsey v. State*, 2007 WL 4965637, at *1–2 (Del. Nov. 6, 2007).
[66] *E.g.*, *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[67] *E.g.*, *State v. Reyes*, 155 A.3d 331, 342 n.15 (Del. 2017).
[68] *See Bailey v. State*, 588 A.2d 1121, 1125 (Del. 1991).
[69] *Ploof*, 75 A.3d at 820.
[70] *See generally* Del. Super. Ct. Crim. R. 61(i)(1)–(4).
[71] *Id.* R. 61(i)(1).
[72] *Id.* R. 61(i)(2).
[73] *Id.* R. 61(i)(3).
[74] *Id.* R. 61(i)(4).

Jones's Claims are timely because they were brought within one year of the Supreme Court's mandate.[75] They are not successive because this is Jones's first motion. And they are not defaulted because they allege ineffective assistance of counsel, which "generally cannot be raised at trial or on direct appeal."[76]

That leaves former adjudication. Relevant here, Rule 61(i)(4) bars on collateral review claims that were resolved on direct appeal. The State accepts that the Severance Claim is not barred under Rule 61(i)(4). Instead, the State contends that Rule 61(i)(4) bars the Acquittal Claim because the Supreme Court found sufficient evidence to support Jones's Aggravated Menacing and PDWDCF convictions. But the Supreme Court reviewed that evidence and Jones's challenges to it for plain error. So *Green v. State*[77] forecloses the State's position.

This Court recently discussed *Green*'s effect on Rule 61(i)(4).[78] In *Green*, the Court found formerly adjudicated ineffective assistance claims that were "similar" to the defendant's past appellate claims.[79] The Court therefore concluded that the defendant's ineffective assistance claims were barred under Rule 61(i)(4).

The Supreme Court disagreed. The Supreme Court first observed that a rigid application of Rule 61(i)(4) to ineffective assistance claims may circumvent the

---

[75] *Id.* R. 61(i)(1), (m)(2).
[76] *Malloy v. State*, 2011 WL 1135107, at *2 (Del. Mar. 28, 2011).
[77] 238 A.3d 160 (Del. 2020).
[78] *See State v. Thompson*, 2022 WL 1744242, at *8 (Del. Super. Ct. May 31, 2022).
[79] *Green*, 238 A.3d at 176.

14

default rule reserving those claims for post-conviction proceedings.[80]  The Supreme Court thus cautioned: "the mere fact that a post-conviction claim might bear some resemblance to a formerly adjudicated claim does not trigger Rule 61(i)(4)'s bar."[81] Put differently, the Supreme Court in *Green* ruled that a prior adjudication of the error underlying an ineffective assistance claim does not necessarily render the ineffective assistance claim formerly adjudicated too.

The Supreme Court formed that conclusion by combining two others.  The Supreme Court first distilled the merits of an ineffective assistance claim from the merits of the underlying error on which it is based.[82]  Then the Supreme Court construed Rule 61(i)(4) to capture only prior, "substantive" adjudications of the underlying errors.[83]  Taken together, the Supreme Court held that an ineffective assistance allegation that "follow[s] on" from a previously adjudicated claim is not procedurally barred if the previous claim was adjudicated on plain error review, rather than on its "substantive merits:"[84]

> [O]n direct appeal we examined the effect that the admission of questionable evidence had on the outcome of Green's trial—an inquiry that is also relevant to Green's ineffective-assistance claims . . . . [But] in Green's direct appeal, we did not address the underlying merits of Green's substantive claims but, instead, concluded that even if the substantive claims had merit, there was no plain error. That conclusion relied on the isolated nature of the claimed errors

---

[80] *See id.* at 175–76.
[81] *Id.* at 176.
[82] *See id.*
[83] *Id.*; *accord State v. Dunnell*, 2021 WL 1716647, at *8–9 (Del. Super. Ct. Apr. 30, 2021).
[84] *Green*, 238 A.3d at 176.

. . . . In this postconviction relief proceeding, however, Green has identified numerous alleged performance deficiencies that bear no direct relationship to his direct-appeal claims. In effect, he is now saying that the errors that we said were not plain in our direct-appeal opinion were not isolated at all. Under these circumstances, it cannot be seriously contended that his ineffective-assistance claims, which . . . could not have been brought in the proceedings leading to the judgment of conviction[,] . . . were nevertheless adjudicated in those proceedings.[85]

The Supreme Court thus preserved the principle that Rule 61(i)(4) "precludes" a defendant "from relitigating" a previously adjudicated issue "under the guise of ineffective assistance of counsel."[86] The Supreme Court merely clarified that an ineffective assistance claim cannot be "relitigated" if it was not litigated (substantively) in the first place.

Even so, *Green* recognized that prior appellate review of the error underlying an ineffective assistance claim may render the ineffective assistance claim "futile."[87] Prior review of a claim—even for plain error—may "implicitly reject[]" the merits of a "follow-on" ineffective assistance allegation that is based on the same claim or a variant of it.[88] So prior review, depending on its scope, may save a follow-on

---

[85] *Id. See also id.* at 187–88 (Vaughn, J., concurring) (explaining distinction using Rule 61(i)(3)'s exception for cause and prejudice).

[86] *Shelton v. State*, 744 A.2d 465, 485 (Del. 2000). *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial . . . .").

[87] *Green*, 238 A.3d at 176. *Accord Thompson*, 2022 WL 1744242, at *8 & n.83; *Dunnell*, 2021 WL 1716647, at *8–9.

[88] *Green*, 238 A.3d at 177–78.

ineffective assistance claim from Rule 61(i)(4).  But even if procedurally proper, the follow-on claim still may "fare no better" than its "direct-appeal precursor."[89]

Here, the Supreme Court reviewed for plain error the alleged errors underlying the Acquittal Claim—*i.e.*, guilty verdicts on insufficient evidence.  So the Acquittal Claim's *ineffective assistance component* is not formerly adjudicated.  But that does not mean the Acquittal Claim will be successful; after all, Jones largely engages the same analysis the Supreme Court already rejected.  It simply means that the Acquittal Claim must be reviewed on the merits.  Accordingly, the Acquittal Claim is not procedurally barred.

## B.  Trial Counsel was not ineffective.

Turning to the merits, Jones's Claims allege ineffective assistance.  Convicted defendants, like Jones, "bear[] the risk . . . for all attorney errors made in the course of the representation . . . unless counsel provides constitutionally ineffective assistance[.]"[90]  In considering ineffective assistance claims, Delaware law "has hewed closely to the principles . . . laid down in" *Strickland v. Washington*.[91]  "Surmounting *Strickland*'s high bar is never an easy task."[92]  "Mere allegations of

---

[89] *Id.* at 177.  *See Riley v. State*, 585 A.2d 719, 721 (Del. 1990) (rejecting ineffective assistance claim because its "underlying" errors were rejected on direct appeal).

[90] *Shinn v. Ramirez*, 142 S. Ct. 1718, 1735 (2022) (internal quotation marks and citations omitted).

[91] *Ray v. State*, --- A.3d ----, 2022 WL 2398442, at *10 (Del. July 1, 2022).  *See generally Strickland v. Washington*, 466 U.S. 668 (1984).

[92] *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

ineffectiveness will not suffice."[93]  To be ineffective, Trial Counsel's alleged mistakes must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[94]

*Strickland*'s "well-worn" analysis proceeds in two steps.[95]  Jones first must show that Trial Counsel's representation "fell below an objective standard of reasonableness[.]"[96]  Allegations of deficient performance are counteracted by "a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."[97]  As a result, Jones must establish that "no reasonable lawyer would have conducted the defense" as Trial Counsel did.[98]  In evaluating Jones's burden, the Court uses a retrospective lens.[99]  A performance analysis involves "reconstruct[ing] the circumstances of counsel's challenged conduct . . . from the counsel's perspective at the time."[100]  Necessarily, then, the scope of performance review is limited to decisions made and excludes consideration of

---

[93] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[94] *Shockley v. State*, 565 A.2d 1373, 1376 (Del. 1989) (internal quotation marks omitted).
[95] *Ploof*, 75 A.3d at 820.
[96] *Ray*, 2022 WL 2398442, at *8 (internal quotation marks omitted).
[97] *Green*, 238 A.3d at 174 (internal quotation marks omitted).
[98] *Swan v. State*, 248 A.3d 839, 859 (Del. 2021) (internal quotation marks omitted).
[99] *E.g.*, *Neal v. State*, 80 A.3d 935, 942 (Del. 2013).
[100] *Ray*, 2022 WL 2398442, at *10 (internal quotation marks omitted).

18

results achieved.[101] The outcomes of reasonable defense strategies and professional judgments are "virtually unchallengeable."[102]

Second, Jones must show that the deficiencies in Trial Counsel's performance "caused him substantial prejudice."[103] In other words, Jones must demonstrate "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different."[104] "A reasonable probability means a probability sufficient to undermine confidence in the outcome . . . ."[105] "The likelihood of a different result must be substantial[,] not just conceivable."[106] So Jones "must make concrete allegations of actual prejudice and substantiate them[.]"[107] The Court will not find prejudice unless Trial Counsel's errors were "so serious as to deprive" Jones of a "fair trial, a trial whose result is reliable."[108]

As explained below, neither one of Jones's Claims shows that Trial Counsel performed deficiently or prejudiced the defense.

### 1. The Acquittal Claim fails to show ineffective assistance.

---

[101] *E.g.*, *Burns v. State*, 76 A.3d 780, 788 (Del. 2013) ("[E]ven evidence of isolated poor strategy, inexperience, or bad tactics does not necessarily amount to ineffective assistance of counsel." (alterations and internal quotation marks omitted)).

[102] *Swan*, 248 A.3d at 859 (internal quotation marks omitted).

[103] *Ray*, 2022 WL 2398442, at *8 (internal quotation marks omitted).

[104] *Id.* at *11 (internal quotation marks omitted).

[105] *Green*, 238 A.3d at 174 (internal quotation marks omitted).

[106] *Swan*, 248 A.3d at 859 (internal quotation marks omitted).

[107] *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996).

[108] *Strickland*, 466 U.S. at 687.

Jones first contends that Trial Counsel's failure to move for acquittal against Aggravated Menacing and PDWDCF was ineffective because there was no evidence that he "attempted to stab" Frisby with the screwdriver.[109] This misstates the law and understates the facts. Sufficient evidence supported Jones's convictions. And an acquittal motion cannot be granted if sufficient evidence exists.[110] So the Court would have denied acquittal on both counts even if Trial Counsel moved for it.

### a. An acquittal motion against the Aggravated Menacing charge would have been denied.

Aggravated Menacing requires the State to prove, among other things, that the defendant "display[ed] what *appears* to be a deadly weapon[.]"[111] The "appearance" element is satisfied so long as the victim subjectively believes that the object may cause death or serious physical injury.[112]

Here, as the Supreme Court observed,[113] Jones put the screwdriver against Frisby's chest after violently beating her. He then said that he would kill her if she did not answer his questions. Frisby testified that she believed Jones would act on his threat. All this testimony comprised sufficient evidence for a "rational [juror,]

---

[109] Def.'s Am. R. 61 Mot. at 18.

[110] *See* Del. Super. Ct. Crim. R. 29(a).

[111] 11 *Del. C.* § 602(b) (emphasis added).

[112] *See Graham v. State*, 2004 WL 557168, at *3 (Del. Mar. 19, 2004) (Aggravated Menacing "eliminate[s] the need for the State to prove that the displayed weapon, *in fact,* created a substantial risk of death . . . . [T]he focus of the aggravated menacing statute is on the victim's *perception of the threat* rather than on the actual risk of danger." (emphases added)).

[113] *Jones*, 2020 WL 91815, at *3.

20

"viewing the evidence in the light most favorable to State,"[114] to find that the screwdriver subjectively appeared to Frisby as a deadly weapon. Accordingly, an acquittal motion would have been denied. Jones suffered no prejudice.

Jones's "attempted stabbing" logic misapprehends Aggravated Menacing. Aggravated Menacing proscribes threatened use of what "appears to be deadly weapon."[115] So the screwdriver did not actually need to be "deadly" for a jury to find guilt.[116] To Frisby, the screwdriver appeared deadly. Her testimony allowed a rational juror to find that she believed the screwdriver—even if not actually used to stab her—was capable of stabbing her. The credibility of her subjective belief was for the jury to decide as a matter of fact, not the Court as a matter of law.[117]

Recognizing this, Trial Counsel did not move for acquittal, but rather tried to cast reasonable doubt on Frisby's perception. He argued that Jones's mere placement of the screwdriver against Frisby's chest could not form a belief that he would use the screwdriver to harm her. Trial Counsel supported this argument using Frisby's own testimony and the statements she made to the police. To the extent this created an evidentiary conflict, the jury was free to—and did—resolve it against

---

[114] *Cline v. State*, 720 A.2d 891, 892 (Del. 1998).
[115] 11 *Del. C.* § 602(b).
[116] *See Jones*, 2020 WL 91815, at *3; *Graham*, 2004 WL 557168, at *3.
[117] *E.g.*, *Poon v. State*, 880 A.2d 236, 238 (Del. 2005) ("[I]t is sole province of the fact finder to determine witness credibility, resolve conflicts in testimony, and draw any inferences from the proven facts . . . . We will not substitute our judgment for the fact finder's assessments in these areas." (citations omitted)).

21

Jones.[118]  The mere fact that the evidence may have been conflicting does not mean the evidence was insufficient.[119]  Because the State introduced enough evidence for the jury to decide who and what to believe, Trial Counsel's acquittal motion, if filed, would have been denied.

### b. An acquittal motion against the PDWDCF charge would have been denied.

Nor do Jones's acquittal arguments undermine his PDWDCF conviction. Indeed, the Supreme Court "implicitly rejected"[120] Jones's arguments on direct appeal in finding "sufficient" evidence from which "the jury [could] infer . . . that Jones was attempting to cause serious harm to Frisby, in spite of testimony that Jones did not actually attempt to stab Frisby."[121]  If sufficient evidence supported a PDWDCF conviction, then sufficient evidence also precluded an acquittal motion. Trial Counsel "cannot be found ineffective for failing to make futile arguments."[122]

---

[118] *See, e.g.*, *Chao v. State*, 604 A.2d 1351, 1363 (Del. 1992) ("Even if a witness'[s] testimony was evasive, conflicting, or severely impaired, the jury has a right to believe as much of it as they believe proper." (internal quotation marks omitted)), *overruled on other grounds by Williams v. State*, 818 A.2d 906 (Del. 2002).

[119] *E.g.*, *Lemons v. State*, 32 A.3d 358, 362 (Del. 2011) ("Evidence that is insufficient to support a conviction warrants reversal, but the mere fact that the evidence is in conflict does not.").

[120] *Green*, 238 A.3d at 177.

[121] *Jones*, 2020 WL 91815, at *4.

[122] *State v. Prince*, 2022 WL 211704, at *7 (Del. Super. Ct. Jan. 24, 2022).  *See also State v. Hammond*, 2011 WL 4638778, at *3 (Del. Super. Ct. Sept. 27, 2011) ("There is no requirement, anywhere, that a defense attorney must discuss futile claims with a client."); *State v. Manley*, 1996 WL 527322, at *6 (Del. Super. Ct. Aug. 1, 1996) ("'[T]he defense bar . . . [is] not obligated to make futile arguments on behalf of . . . clients.'" (quoting *United States v. Zafiro*, 945 F.2d 881, 886 (7th Cir. 1991), *aff'd*, 506 U.S. 534 (1993))).

True, the Supreme Court applied plain error review. And plain error prejudice can be a "more exacting" standard than *Strickland* prejudice.[123] But neither type of prejudice will be found where counsel makes a "tactical decision[]" to "pursue a particular defense and eschew another."[124] Here, Trial Counsel made the very same deadly weapon and insufficiency arguments to the jury that Jones has recast as bases for acquittal now. By reasserting Trial Counsel's arguments, Jones has all but conceded Trial Counsel's effectiveness.[125]

Even if the Supreme Court's opinion did not exist, the Court still would find that sufficient evidence supports Jones's PDWDCF conviction.

Dangerous instruments become "deadly weapons if, under the circumstances of their use, they had the *potential*" to inflict death or serious physical injury.[126] "The 'circumstances' to be considered must include the actor's intent and manner of use."[127] Here, the jury heard that Jones forced the screwdriver against Frisby's

---

[123] *Neal*, 80 A.3d at 948.

[124] *Stansbury v. State*, 591 A.2d 188, 191 (Del. 1991).

[125] Jones also cites isolated language in the Supreme Court's opinion to suggest that the Supreme Court would have reversed his convictions if Trial Counsel did not prejudice the standard of review. Def.'s Am. R. 61 Br. at 18, 20. This begs the question. If Trial Counsel was not ineffective at trial, then his effects on appellate review would be irrelevant. *See State v. Stevenson*, 2020 WL 5517193, at *2–3 (Del. Super. Ct. Sept. 10, 2020); *State v. Anderson*, 2017 WL 129044, at *4 (Del. Super. Ct. Jan. 13, 2017); *see also Ray*, 2022 WL 2398442, at *10 (explaining that ineffectiveness analysis is retrospective and considers counsel's decisions at the time they were made). Jones fails to show that Trial Counsel was ineffective at trial. So the Court declines to join Jones in reading between the Supreme Court's lines.

[126] *Johnson*, 711 A.2d at 27 (emphasis added). *Accord Taylor v. State*, 679 A.2d 449, 454 (Del. 1996).

[127] *Carter v. State*, 933 A.2d 774, 778 (Del. 2007) (emphasis omitted).

chest—a "vulnerable part of [her] body"[128]—after he unplugged all the lights, held her down, and beat her to speechlessness. For good measure, Jones kept the screwdriver on her chest as he said that he would kill her. Frisby testified that she believed him. She was scared, nervous, and hyperventilating as she stood at screwdriver-point. Under these circumstances, a jury easily could find the screwdriver "had the potential" to cause Frisby serious physical injury and that Jones attempted to use it that way.[129]

More than supported, these findings were uniquely reserved for the jury. Questions of intent, and the circumstances surrounding it, involve factual issues not amenable to resolution on a dispositive motion.[130] Similarly, attempts are considered "jury issue[s]" that "depend[] on the surrounding circumstances."[131] Indeed, the choice to find an attempt is "entirely left to the discretion of the jury[.]"[132] In

---

[128] *Id.* at 779. Jones tries to analogize his conduct to hitting Frisby on the hand "with the plastic end of a lacrosse stick." Def.'s Am. R. 61 Mot. at 17. This metaphor is, at best, inapt. The Supreme Court has made clear that deadly weapon analysis disregards imaginary scenarios. *See Carter*, 933 A.2d at 778–79. Jones used a screwdriver, not a lacrosse stick, and a screwdriver to the chest is more likely to "cause[] serious injury or death" than a slap on the wrist. *Id.* at 779.

[129] *Johnson*, 711 A.2d at 27.

[130] *E.g.*, 11 *Del. C.* § 307 (1995); *State v. Herbert*, 2022 WL 811175, at *3–5 (Del. Super. Ct. Mar. 17, 2022).

[131] *Bright v. State*, 740 A.2d 927, 934 (Del. 1999). Although Jones was not charged with an attempt, the deadly weapon definition uses that word without defining it. "Undefined words in the criminal code are to be given their commonly accepted meaning, unless they are specifically defined elsewhere in Title 11." *Andrews v. State*, 34 A.3d 1061, 1063 (Del. 2011) (internal quotation marks omitted). Attempt is specifically defined in Title 11, *see* 11 *Del. C.* § 531 (1995), and caselaw has explained that attempts are jury issues, *e.g.*, *Gronenthal v. State*, 779 A.2d 876, 881 (Del. 2001).

[132] *Gronenthal*, 779 A.2d at 881. *See also Delaware Criminal Code with Commentary* § 532 cmt. (1973) (observing legislative intent to define attempt flexibly so that jury has leeway in

exercising its discretion, the jury was not required to "believe even uncontroverted testimony" about how Jones used or did not use the screwdriver.[133] The jury also was permitted to credit circumstantial evidence of Jones's use over direct evidence of it.[134] Whatever type of evidence the jury believed, the evidence it believed was sufficient. An acquittal motion would have been denied.

Rather than filing a futile motion, Trial Counsel concentrated his efforts on convincing the jury that the screwdriver was not a deadly weapon. In doing so, Trial Counsel (i) developed a novel statutory interpretation; (ii) extracted useful testimony on cross; (iii) structured his summation to make the screwdriver look like a non-deadly weapon; and (iv) persuaded the Court to amend the jury instructions to include language that favored the defense's presentation of the facts. The Court ultimately gave the jury Jones's preferred instructions, all of which the Supreme Court deemed "proper[]" on direct appeal.[135] The jury found Jones guilty anyway. Trial Counsel did what he could to show the jury otherwise. He was unsuccessful, but not ineffective.[136] Jones suffered no prejudice from the absence of a motion that was bound to lose.

---

determining whether attempted act occurred); *see generally Hassan-El v. State*, 911 A.2d 385, 392 (Del. 2006) ("The law of attempts . . . seeks to prevent even the preparations [of] crime . . . ." (internal quotation marks omitted)).

[133] *Poon*, 880 A.2d at 238.

[134] *See Lemons*, 32 A.3d at 362–63.

[135] *Jones*, 2020 WL 91815, at *4.

[136] *See Harrington*, 562 U.S. at 110 ("[T]here is no expectation that . . . counsel will be a flawless strategist or tactician[.]"); *United States v. Hasting*, 461 U.S. 499, 508–09 (1983) ("[T]aking into

Undeterred, Jones continues to insist there was no evidence that he "actually attempted to stab" Frisby.[137] But that shred of self-control, although fortuitous for Frisby, would not have rewarded Jones with a judge-made acquittal.

A stab is one way to attempt to use a sharp object lethally, but not the only way. For example, one might attempt to use a screwdriver lethally by threatening to kill someone while holding it.[138] Even less subtly, one also might attempt to use a screwdriver lethally by thrusting it against a woman's unprotected chest.[139] Either way, Jones points to no authority requiring an object to inflict or nearly inflict a certain degree of damage before it transforms to a deadly weapon.

Nor could he. PDWDCF proscribes "possession," not use, "of a deadly weapon." As a result, the "PDWDCF statute does not require that the victim *even be aware* that the defendant possesses a deadly weapon."[140] Imputing Jones's attempted stabbing requirement to the PDWDCF statute would equate possession of

---

account the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and . . . the Constitution does not guarantee [one]."); *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) ("[T]o satisfy due process, [a defendant's] trial must have been fair; it need not have been perfect."); *Thompson*, 2022 WL 1744242, at *17 ("[T]he ineffective assistance standard does not require a defense lawyer to be perfect. It requires only that the lawyer's strategies be reasonable." (citations omitted)); *Khan v. Capra*, 2020 WL 6581855, at *5 (S.D.N.Y. Nov. 10, 2020) ("A defendant is entitled to a competent lawyer, not an omniscient one." (internal quotation marks omitted)).

[137] Def.'s Am. R. 61 Mot. at 18.

[138] *Cf. DeJesus v. State*, 655 A.2d 1180, 1203–05 (Del. 1995) (threats in connection with attempted robbery); *State v. Stovall*, 1996 WL 659026, at *3–4 (Del. Super. Ct. Sept. 30, 1996) (threats in connection with attempted acts of intimidation).

[139] *Cf. Carter*, 933 A.2d at 778 ("[A] blow to an unprotected human head . . . presents quite a different circumstance than a . . . blow to an unprotected hand.").

[140] *Graham*, 2004 WL 557168, at *3 (emphasis added).

a weapon with using a weapon, effectively merging PDWDCF with the substantive offense to which it relates.[141]  Equally problematic, such a requirement would frustrate the statute's goals.  By enacting PDWDCF, the legislature intended to "deter possession . . . and thus obviate . . . enhanced danger . . . posed to the victim[]" before it materializes into something worse.[142]  A stabbing requirement would not "give effect to the legislature's intent"—it would vitiate it.[143]  Accordingly, the Acquittal Claim fails.

## 2. The Severance Claim fails to show ineffective assistance.

Finally, the Court turns to the Severance Claim.  Jones argues that the presence of the Non-Comp Bond charges "could [have] influence[d]" the jury's "ability to compartmentalize their judgment . . . with regard[] to the different charges."[144]  According to Jones, the Letter "left the impression" that he was an "incarcerated felon who was unable to post bail."[145]  Jones then concludes, without evidence, that Trial Counsel's failure to sever the Non-Comp Bond charges was "highly prejudicial."[146]

---

[141] *But see id.* at \*3 (discerning "legislative intent to permit cumulative sentencing for" Aggravated Menacing and its associated PDWDCF).

[142] *Id.*

[143] *Ross v. State*, 990 A.2d 424, 428 (Del. 2010).

[144] Def.'s Am. R. 61 Mot. at 24.

[145] *Id.* at 21.  Jones also argues in passing that the Letter's references to his potential punishment was prejudicial.  *Id.* at 25.  But this hypothesis, like the others discussed below, lacks particularized support.

[146] *Id.* at 25.

The difficulty with Jones's position is that it lies in phrases like "could well" and words like "perhaps." Jurors are the finders of fact. The jury speaks only through its verdict.[147] Courts and attorneys cannot peer inside jurors' minds to see what they are thinking about or not thinking about. Instead, the law looks to the language of the jury instructions, the purpose of which is to objectively inform the jury of the law that must applied to the facts as the jury finds them.[148] Here, the Court instructed the jury on the elements of Non-Comp Bond, none of which hinges on what Jones said in the Letter. "Juries are presumed to follow the court's instructions."[149] Jones offers no basis for finding this jury did not.

Jones's speculative approach falters for additional reasons. For one thing, Jones bears the burden of demonstrating "substantial prejudice resulting from" joinder.[150] Joinder prejudice is fact-specific and must be actual[151] and so Jones's "hypothetical assertion of prejudice is not enough" to meet his burden.[152] The Court

---

[147] *See State v. Terreros*, 2021 WL 5577253, at *5 (Del. Super. Ct. Nov. 29, 2021).
[148] *See, e.g.*, *Bullock v. State*, 775 A.2d 1043, 1047 (Del. 2001) (explaining that primary purpose of jury instructions is to objectively inform jury of law that must be applied to disputed facts); *cf. Schmuck v. United States*, 489 U.S. 705, 720–21 (1989) (adopting "objective elements" approach to instructing juries on lesser-included offenses, which reduces "nuances of inference" and makes instructions easier to apply and verdicts easier to review).
[149] *Phillips v. State*, 154 A.3d 1130, 1138 (Del. 2017).
[150] *Skinner v. State*, 575 A.2d 1108, 1118 (Del. 1990).
[151] *E.g.*, *Wiest v. State*, 542 A.2d 1193, 1195 (Del. 1988).
[152] *Jackson v. State*, 990 A.2d 1281, 1287 (Del. 2009).

would have denied severance if it were presented with the "unsubstantiated claims of prejudice" Jones iterates now.[153]

For another, barebones prejudice allegations doom ineffective assistance claims.[154] To establish prejudice, Jones needed to allege with particularity how Trial Counsel's failure to move to sever "create[d] . . . a serious risk" of "compromis[ing]" one of Jones's "specific trial rights" or "prevent[ed] the jury from making a reliable" verdict.[155] He did not. Jones's high-level shots at the Letter miss those marks.[156]

Even so, Jones's prejudice, if any, is too remote to find that a severance motion would have changed the outcome. Jones overlooks that the Letter would have been admissible in a severed Aggravated Menacing and PDWDCF case. In fact, he does not discuss admissibility at all.

"As a general matter," joinder prejudice arises where "the jury may use the evidence of one of the crimes to infer a general criminal disposition of the defendant in order to find guilt of the other crime or crimes[.]"[157] But if the disputed evidence would have been "admissible at a separate trial," then "there would be no unfair

---

[153] *Sexton v. State*, 397 A.2d 540, 545 (Del. 1979), *overruled on other grounds by Hughes v. State*, 437 A.2d 559 (Del. 1981). *Accord Jackson*, 990 A.2d at 1287.

[154] *E.g.*, *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014) ("The failure to state with particularity the nature of the prejudice experienced is fatal to a claim of ineffective assistance of counsel." (internal quotation marks omitted)).

[155] *Lloyd v. State*, 249 A.3d 768, 778 (Del. 2021) (internal quotation marks omitted).

[156] *See, e.g.*, *Richardson v. State*, 3 A.3d 233, 240 (Del. 2010) ("[T]he burden is on the defendant to make concrete and substantiated allegations of prejudice.").

[157] *Caldwell v. State*, 780 A.2d 1037, 1055 (Del. 2001) (internal quotation marks omitted).

prejudice in having a joint trial."[158] Under Rule 404(b), evidence of "other crimes" may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[159] This list may be expanded in accordance with the proffered evidence's "logical relevancy."[160] As a result, "acts, conduct, and declarations of the accused occurring after the commission of an alleged offense which are relevant and tend to show a consciousness of guilt or a desire or disposition to conceal the crime are admissible in evidence."[161]

The Letter was logically relevant to, and completed, the State's story: "Jealousy . . . connected with an intimate relationship can be brutal."[162] Through the Letter, Jones deployed the psychological control he exerted on Frisby to manipulate her into being an uncooperative witness. The State argued that this exemplified Jones's domestic abuse.[163] That abuse tends to corroborate Jones's motive and intent for the attack—*e.g.*, possessiveness; an accusation of infidelity. And his efforts to suppress Frisby's testimony tend to show his desire to conceal his crimes. The Letter, then, would further support a finding that Jones committed Aggravated Menacing, PDWDCF and all the other charges.

---

[158] *Monroe v. State*, 28 A.3d 418, 426 (Del. 2011).
[159] Del. R. Evid. 404(b)(2).
[160] *E.g.*, *Getz v. State*, 538 A.2d 726, 730–31 (Del. 1988).
[161] *Monroe*, 28 A.3d at 427.
[162] A54 at 61:10–11 (State's Opening Statement).
[163] *See, e.g.*, A65 at 105:18–23, 106:3–4 (Sidebar).

In the end, the jury did not need the Letter to know that Jones faced serious felony charges: he also was tried on possession of a deadly weapon during *the commission of a felony*.[164] Punishment and criminal status were central to Jones's trial even without the Non-Comp Bond charges. So Trial Counsel reasonably determined that further emphasizing the severity of the charges would have been disadvantageous.[165] If Jones suffered any prejudice, it was caused by his own conduct, not Trial Counsel's performance. Accordingly, the Severance Claim fails.

## IV. CONCLUSION

Jones failed to show that Trial Counsel represented him ineffectively. Accordingly, his Rule 61 motion is **DENIED**.

**IT IS SO ORDERED**.

/s/ Jan R. Jurden
Jan R. Jurden, President Judge

---

[164] The parties identified as much in discussing the possibility of a curative instruction. *See* A65 at 106:11–21 (Sidebar).

[165] *See* A100 at 112:14–23, 113:1–4 (Trial Counsel explains that seeking a curative instruction would not be "strategically the best move"). *E.g.*, *Baker v. State*, 906 A.2d 139, 156 (Del. 2006) (attributing failure to request a curative instruction to "trial strategy"); *see Rhoades v. State*, 2016 WL 7011352, at *2 (Del. Nov. 30, 2016) (same in mistrial context).